

# In the
# Missouri Court of Appeals
## Western District

<table>
<tr><td>SCOTT FITZPATRICK, IN HIS<br>OFFICIAL CAPACITY AS<br>MISSOURI STATE TREASURER,</td><td>)<br>)<br>)<br>)</td><td>WD85060</td></tr>
<tr><td>Appellant,</td><td>)<br>)</td><td>OPINION FILED: January 13, 2022</td></tr>
<tr><td>v.</td><td>)<br>)<br>)</td><td></td></tr>
<tr><td>JOHN R. ASHCROFT, IN HIS<br>OFFICIAL CAPACITY AS<br>MISSOURI SECRETARY OF<br>STATE,</td><td>)<br>)<br>)<br>)<br>)<br>)</td><td></td></tr>
<tr><td>Respondent.</td><td>)</td><td></td></tr>
</table>

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Daniel Richard Green, Judge

Before Special Division:  Cynthia L. Martin, Chief Judge, Presiding, Lisa White Hardwick, Judge and Thomas N. Chapman , Judge

On May 4, 2021, the General Assembly passed House Joint Resolution 35 ("HJR 35"), which proposes to amend Article IV, Section 15 of the Missouri Constitution to expand the Missouri State Treasurer's authority to invest state funds.

Scott Fitzpatrick, in his official capacity as Missouri State Treasurer, ("Treasurer"), filed suit against John R. Ashcroft, in his official capacity as Missouri Secretary of State

("Secretary of State") in the Circuit Court of Cole County on July 19, 2021. The Treasurer challenged the summary statement in the official ballot title for HJR 35 prepared by the Secretary of State. The Treasurer also challenged the fair ballot language for HJR 35 prepared by the Secretary of State.

The Treasurer's challenges were tried on December 2, 2021 on a stipulated record. The circuit court entered its findings of fact, conclusions of law, and final judgment on December 13, 2021 ("Judgment"). The circuit court found that the official ballot title for HJR 35 was not unfair or insufficient, and certified the official ballot title to the Secretary of State. The circuit court found that the fair ballot language for HJR 35 was not unfair or insufficient, except with respect to the "no" section, which the parties stipulated was incomplete and missing terms. The circuit court rewrote the "no" section of the fair ballot language consistent with the parties' stipulation, and certified the revised fair ballot language to the Secretary of State.

The Treasurer appeals. Finding no error, we affirm.


### Factual Background[1]

During the 2021 regular session, the General Assembly passed HJR 35. HJR 35 submits to voters a proposed amendment to Article IV, section 15 of the Missouri Constitution. The proposed amendment would change from five to seven years the time

---

[1]This case was tried to the circuit court on a stipulated record. The factual background is drawn from the Joint Stipulation of Facts and Exhibits submitted to the circuit court by the Treasurer and the Secretary of State.

2

within which moneys invested by the Treasurer in obligations of the United States government or any agency or instrumentality thereof must mature and become payable. In addition, the proposed amendment would expand the Treasurer's constitutionally described investment authority as follows:

> The treasurer may also invest in municipal securities possessing one of the five highest long term ratings or the highest short term rating issued by a nationally recognized rating agency and maturing and becoming payable not more than five years from the date of purchase. The treasurer may also invest in other reasonable and prudent financial instruments and securities as otherwise provided by law.

HJR 35 did not include ballot language drafted by the General Assembly. On May 25, 2021, HJR 35 was signed by the Speaker of the Missouri House of Representatives and the President Pro Tem of the Missouri Senate, and delivered to the Secretary of State.

The Secretary of State prepared a proposed summary statement for HJR 35, and transmitted same to Attorney General Eric Schmitt ("Attorney General") on June 14, 2021, as required by section 116.160.[2] The Secretary of State's proposed summary statement read as follows:

> Do you want to amend the Missouri Constitution to:
>
> • allow the General Assembly to override the current constitutional restrictions of state investments by the state treasurer; and
> • allow state investments in municipal securities possessing one of the top five highest long term ratings or the highest short term rating?

---

[2]All statutory references are to RSMo 2016, as supplemented through the date of the circuit court's Judgment, unless otherwise noted.

On June 28, 2021, the Attorney General approved the summary statement for HJR 35. The Secretary of State then certified the official ballot title for HJR 35, (which includes the summary statement),[3] on July 9, 2021, as required by section 116.180.

The Secretary of State also prepared proposed fair ballot language for HJR 35, and transmitted same to the Attorney General on June 14, 2021, as required by section 116.025. The Secretary of State's proposed fair ballot language read as follows:

> A **"yes"** vote will amend the Missouri Constitution to grant the General Assembly statutory authority to invest state funds and also expand the state treasurer's investment options. Currently the Constitution grants the General Assembly no statutory investment authority and limits the treasurer's investment options. This amendment will allow the General Assembly by statute to determine investment avenues for the state treasurer to invest state funds, as well as allow the state treasurer to invest in municipal securities.
>
> A **"no"** vote will not amend the Missouri Constitution and limit the treasurer to investing state funds only in those currently approved by the Constitution.
>
> If passed, this measure will have no impact on taxes.

On June 28, 2021, the Attorney General approved the fair ballot language for HJR 35. The Secretary of State then designated HJR 35 as "Amendment 1," and certified the measure for inclusion on the November 8, 2022 general election ballot.

The Treasurer filed suit on July 19, 2021 in the Circuit Court of Cole County, challenging the summary statement in the official ballot title and the fair ballot language. The Treasurer objected to use of the word "override" in the first bullet point of the summary statement. The Treasurer argued that the word "override" in the first bullet point of the

---

[3]The official ballot title also includes a fiscal note summary. The fiscal note summary is not at issue in this case.

4

summary statement is "intentionally argumentative and likely to create a prejudice against the proposed measure."

The Treasurer objected to the fair ballot language, arguing that the first sentence of the "yes" section "does not fairly or accurately describe the measure because it erroneously specifies that a 'yes' vote would amend the Missouri Constitution to grant the General Assembly statutory authority to invest state funds." The Treasurer argued that "[t]his is misleading and undeniably false" because the Treasurer "has the exclusive authority to invest state funds." The Treasurer also objected to the third sentence of the "yes" section of the fair ballot language, arguing it is misleading "because it implies the General Assembly would be the sole authority for determining investment avenues available to the State Treasurer," when in fact it is within the Treasurer's "sole discretion" to select among constitutionally authorized investment options. Finally, the Treasurer argued that the "no" section of the fair ballot language is incomplete and missing terms.

The Treasurer's suit was tried to the circuit court on a stipulated record on December 2, 2021. The circuit court entered its Judgment on December 13, 2021. The circuit court found that the summary statement was not unfair or insufficient, and certified the summary statement in the form originally proposed and certified by the Secretary of State.

The circuit court found that the "yes" section of the fair ballot language was not unfair or insufficient, and certified the "yes" section of the fair ballot language in the form originally proposed by the Secretary of State.

The circuit court found that the Treasurer and the Secretary of State agreed that the "no" section of the fair ballot language is incomplete and missing terms, and jointly

5

proposed adding the words "investment option" after the word "those." The circuit court agreed with the jointly proposed modification, and certified an alternative "no" section for the fair ballot language as follows:

> A **"no"** vote will not amend the Missouri Constitution and limit the treasurer to investing state funds only in those investment options currently approved by the Constitution.

The Treasurer filed an appeal from the Judgment on December 27, 2021, fourteen days after the Judgment was entered. This court entered an order expediting submission of the record on appeal, briefing, and oral argument, as section 116.190.5 requires challenges to official ballot titles and fair ballot language to be "fully and finally adjudicated within one hundred eighty days of filing, and more than fifty-six days prior to election in which the measure is to appear, including all appeals." Based on section 116.190.5, the Treasurer advised this court in his notice of appeal that this case, including appeals, must be finally adjudicated by January 14, 2022.[4]

## Timeliness of Appeal

The Secretary of State filed a motion to dismiss the Treasurer's appeal as untimely. The motion was taken with the case. Because the "[t]imely filing of a notice of appeal is jurisdictional," we must resolve the Secretary of State's motion to dismiss before addressing the merits of the Treasurer's appeal. *Spicer v. Donald N. Spicer Revocable*

---

[4]The last date that is within one hundred eighty days of the date of filing of the Treasurer's suit on July 19, 2021, is actually January 15, 2022, a Saturday. No Missouri case has addressed whether the deadline in section 116.190.5 is subject to Rule 44.01, which would operate to extend the time frame for full and final adjudication of this case to the "end of the next day which is neither a Saturday, Sunday nor a legal holiday." In this case, that would be Tuesday, January 18, 2022. We will not resolve that issue here, however, and instead rely on the Treasurer's representation that his case must be finally adjudicated by Friday, January 14, 2022.

6

*Living Tr.*, 336 S.W.3d 466, 471 (Mo. banc 2011) (quoting *Berger v. Cameron Mut. Ins. Co.*, 173 S.W.3d 639, 640 (Mo. banc 2005)).

Section 116.190 establishes a right to challenge the sufficiency of an official ballot title, including the summary statement therein contained. By cross-reference, section 116.190 also establishes a right to challenge the sufficiency of fair ballot language, as section 116.025 provides that "fair ballot language statements may be challenged in accordance with section 116.190." Specifically, section 116.190.1 provides that "[a]ny citizen[5] . . . may bring an action in the circuit court of Cole County" to challenge an official ballot title or, by cross-reference, fair ballot language.

Section 116.190.4 requires expedited resolution of section 116.190 challenges. In addition to noting that the action "shall be placed at the top of the civil docket," section 116.190.4 provides that "[a]ny party to the suit may appeal to the supreme court within ten days after a circuit court decision." The exigency of section 116.190 actions is underscored by section 116.190.5, which requires such actions to be "fully and finally adjudicated

---

[5]The Joint Stipulation of Facts and Exhibits submitted to the circuit court by the Treasurer and the Secretary of State includes, at paragraph 2, a stipulation that the Treasurer "is a citizen of Missouri." This is not a factual stipulation, and is instead a legal stipulation involving the Treasurer's standing to sue. *Schweich v. Nixon*, 408 S.W.3d 769, 773 (Mo. banc 2013) (holding that standing to bring suit is a question of law). The parties' stipulation regarding standing to sue is not binding on the trial court and is not binding on this court. *La-Z-Boy Chair Co. v. Dir. of Econ. Dev.*, 983 S.W.2d 523, 525 (Mo. banc 1999) (holding that parties' stipulation cannot bind a court in its determination of questions of law).

We question whether the Treasurer is a "citizen" for purposes of section 116.190 when suit was filed by the Treasurer in his official capacity. Ordinarily, for example, suits *against* a state official in their official capacity are considered suits against the state. *See, e.g., State ex rel. Cravens v. Nixon*, 234 S.W.3d 442, 449 (Mo. App. W.D. 2007) (noting that suits against state officers or employees in their official capacities "are essentially direct claims against the state"). And though "a state officer has 'the capacity to bring suit to enforce [his] powers and duties under the Missouri Constitution,'" *Schweich*, 408 S.W.3d at 775 (quotation omitted), that does not necessarily permit the conclusion that a state officer is a "citizen" with standing to bring a pre-election challenge to an official ballot title or to fair ballot language pursuant to section 116.190.

We have elected not to resolve this unbriefed issue given the highly expedited nature of this appeal, and instead assume, *arguendo*, without finding, that the Treasurer had standing to file a section 116.190 challenge in his official capacity as a "citizen of Missouri."

7

within one hundred eighty days of filing, and more than fifty-six days prior to election in which the measure is to appear, including all appeals," or the matter "shall be extinguished."[6]

The Secretary of State argues that section 116.190.4 required the Treasurer to file an appeal from the Judgment within ten days after its entry, and since the Treasurer's appeal was filed fourteen days after the Judgment, it is untimely and must be dismissed. The Treasurer counters that the phrase "[a]ny party to the suit may appeal *to the supreme court* within ten days after a circuit court decision" only applies to appeals taken to the Supreme Court. The Treasurer thus argues that section 116.190.4 is silent with respect to appeals taken to the court of appeals, requiring resort to Rule 81.04,[7] which states that a "notice of appeal shall be filed not later than ten days after the judgment, decree, or order appealed from becomes final." Because Rule 81.05(a)(1) provides that "[a] judgment becomes final at the expiration of thirty days after its entry if no timely authorized after-trial motion is filed,"[8] the Treasurer argues that the Judgment will not be final for purposes of appeal until January 12, 2022,[9] and a notice of appeal could theoretically be filed at any time thereafter through January 22, 2022.[10]

---

[6]This period of time can be extended by the court "upon a finding of good cause for such extension." Section 116.190.5. However, "[s]uch good cause shall consist only of court-related scheduling issues and shall not include requests for continuances by the parties." *Id.* There are no court-related scheduling issues in this case necessitating an extension of the time period set forth in section 116.190.5.

[7]All references to Rules are to *Missouri Court Rules, Volume I - State, 2021*, unless otherwise noted.

[8]Rule 81.05(a)(1) is commensurate with the fact that Rule 75.01 provides that a trial court retains jurisdiction over judgments during the thirty-day period after entry.

[9]This would mean that the Treasurer's appeal was prematurely filed on December 27, 2021, an issue we address, *infra*.

[10]Of course, as we have already noted, section 116.190.5 requires the Treasurer's challenge to the official ballot title and the fair ballot language to be fully and finally adjudicated, including appeals, within one hundred eighty days, which the Treasurer represents to be by January 14, 2022.

We reject the Treasurer's contention that the phrase "[a]ny party to the suit may appeal to the supreme court within ten days after a circuit court decision" only applies to appeals taken to the Supreme Court. "The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." *Kehlenbrink v. Dir. of Revenue*, 577 S.W.3d 798, 800 (Mo. banc 2019) (quotation omitted). By its plain terms, section 116.190.4 addresses two distinct subjects: (i) when an appeal may be filed; and (ii) where the appeal may be filed. With respect to the second subject, we have previously held that the reference in section 116.190.4 to actions being appealed "to the supreme court" is not controlling, as the Supreme Court's appellate jurisdiction is constitutionally defined, and "the legislature cannot expand the scope of the Supreme Court's direct appellate jurisdiction beyond the categories of cases specified in Article V, [section] 3" of the Missouri Constitution. *Boeving v. Kander*, 493 S.W.3d 865, 872-73 (Mo. App. W.D. 2016) (citing *Missourians to Protect the Initiative Process v. Blunt*, 799 S.W.2d 824, 826 n.1 (Mo. banc 1990)). We thus concluded that in the absence of a challenge invoking the Supreme Court's exclusive jurisdiction, the appeal authorized by section 116.190.4 must be filed in the court of appeals. *Id*. at 872 ("Although [section] 116.190.4 authorizes an appeal only 'to the supreme court,' we conclude that we have jurisdiction over these appeals.") In so holding, we rejected the argument made by the Treasurer here that section 116.190.4 applies only to appeals to the Supreme Court. *Id*. at 873 ("[Section] 116.190.4 cannot be read to authorize a direct appeal to the Supreme Court.")

9

*Boeving* did not address, however, ***when*** an appeal may be filed pursuant to section 116.190.4. But necessarily implied in our holding in *Boevin*g is that section 116.190.4 authorizes the right of appeal within ten days of the circuit court's decision to ***any*** appellate court of appropriate jurisdiction. That is particularly so as the appeal in *Boeving* was filed on May 20, 2016, one day after the entry of the circuit court's May 19, 2016 judgment disposing of the section 116.190 challenge. *Id*. at 871. It would be incongruent to conclude that section 116.190.4 only permits an appeal within ten days if the appeal is filed in the Supreme Court, given the General Assembly's plain intent to create a pathway that facilitates the full and final adjudication of section 116.190 actions within the aggressively compressed time frame set forth in section 116.190.5.

The question remains, however, whether the phrase "[a]ny party to the suit ***may*** appeal . . . within ten days after a circuit court decision" requires, or merely authorizes, an appeal to be filed in an appellate court of appropriate jurisdiction within ten days. Section 116.190.4. The Secretary of State argues that section 116.190.4 is a special statutory proceeding, and that the time specified in the statute for filing an appeal from a special statutory proceeding is controlling and exclusive, citing *Howard v. Southeast Missouri Hospital*, 348 S.W.3d 831 (Mo. App. E.D. 2001). The Secretary of State thus argues that "may" means "shall," such that the Treasurer's failure to file an appeal within ten days of the circuit court's Judgment forecloses the right of appeal. The Secretary of State argues that this is the only construction that is consistent with the General Assembly's intent to expedite legal challenges to official ballot titles and fair ballot language.

10

The Treasurer counters that section 116.190.4 is directory, not mandatory, because it uses the word "may" and does not impose a penalty for failing to file an appeal within that time, citing *Frye v. Levy*, 440 S.W.3d 405, 409 (Mo. banc 2014). According to the Treasurer, the only penalty imposed by section 116.090 is in subsection 5, which deems a section 116.190 challenge extinguished if it is not fully and finally adjudicated within the time prescribed. The Treasurer thus argues that the right to appeal within ten days described in section 116.190.4 is permissive, but not exclusive, such that the general right to appeal final judgments within the time permitted by a collective reading of Rules 81.04, 81.05, and 75.01, remains an available option.

No reported decision has addressed whether the right of appeal authorized by section 116.190.4 is permissive or exclusive. To resolve this issue of first impression, we begin with the settled principle that "[t]he right to appeal is purely statutory." *Sansone Grp. DDR LLC v. Pennington-Thurman*, 613 S.W.3d 424, 426 (Mo. App. E.D. 2020); *see also* Rule 81.01 ("The right of appeal shall be as provided by law."). This settled principle aligns with the Missouri Constitution which provides at Article V, section 5 that although the Supreme Court "may establish rules relating to practice, procedure and pleading for all courts and administrative tribunals," said rules "shall not change . . . the right of appeal." Stated another way, the General Assembly has the exclusive power to create a right of appeal, while the Supreme Court has the authority to establish practice and procedural rules that have the force and effect of law relating to exercise of a statutory right of appeal.

Section 512.020 is the primary statute describing the right of appeal. Relevant to this case, section 512.020 provides:

> Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, ***nor clearly limited in special statutory proceedings***, may take his or her appeal to a court having appellate jurisdiction from any:
>
> . . . .
>
> (5) Final judgment in the case . . . .

(Emphasis added.) Section 512.020 does not define "final judgment." Instead, consistent with the constitutional authority extended to the Supreme Court to establish rules relating to exercise of the right of appeal, Rules 81.04, 81.05, and 75.01 combine to supply this definition for purposes of determining when the right of appeal authorized by section 512.020(5) can be exercised.

For purposes of section 512.020, we assume that the Treasurer is a proper party to this section 116.190 civil cause.[11] Plainly, the Treasurer is aggrieved by the circuit court's Judgment. It is uncontested that the Judgment is a "final judgment" because it fully resolves at least one claim in the Treasurer's civil suit and establishes all of the rights and liabilities of the parties with respect to that claim, and because it disposes of all claims in the Treasurer's suit. *Randolph v. City of Kansas City*, 599 S.W.3d 517, 519 (Mo. App. W.D. 2020) (citing *Wilson v. City of St. Louis*, 600 S.W.3d 763, 768 (Mo. banc 2020)); *see* Rules 81.04, 81.05, 75.01. Finally, it is uncontested that the Treasurer's appeal from the Judgment is not prohibited by the Missouri Constitution, and that the Treasurer has taken this appeal to a court having appellate jurisdiction. The sole question is whether the

---

[11]*See* footnote 5, *supra*.

Treasurer's appeal from the circuit court's Judgment, which was filed more than ten days after the Judgment was entered, is timely.

The Secretary of State argues that the Treasurer's appeal is untimely because, pursuant to section 512.020, the Treasurer's right to appeal from the circuit court's Judgment is not controlled by section 512.020(5), but is instead "clearly limited in [a] special statutory proceeding[]" to ten days from the entry of the Judgment. The Secretary of State thus argues that Rules 81.04, 81.05 and 75.01 have no application to section 116.190 judgments.

We agree with the Secretary of State that suits authorized by section 116.190 are special statutory proceedings. We do not agree, however, that section 116.190.4 "clearly *limits*" the right of appeal in a section 116.190 action.

In enacting section 116.190 and all amendments thereto, we presume that the legislature was fully aware that although section 512.020(5) provides a right of appeal from final judgments in civil actions, such judgments are not procedurally eligible to be appealed until at least thirty days after their entry pursuant to Rules 81.04, 81.05 and 75.01. *Matter of Nocita*, 914 S.W.2d 358, 359 (Mo. banc 1996) (holding that the legislature is presumed to be aware of the state of the law at the time it enacts a statute). As such, a final judgment (as that term is defined in *Wilson*, 600 S.W.3d at 768) effectively remains interlocutory in character for a minimum of thirty days after its entry, as it remains subject to vacation, reopening, correction, amendment, or modification by the trial court. Rule 75.01. Though section 512.020(5) creates a right to appeal final judgments, that right cannot be exercised until a judgment procedurally qualifies as a final, appealable judgment pursuant to Rules

13

81.04, 81.05 and 75.01. Thus, section 512.020 affords no right to appeal a judgment while it is interlocutory[12] because it remains subject to the trial court's control pursuant to Rule 75.01.

Aware of this fact, and consistent with the General Assembly's intent that section 116.190 proceedings should be able to proceed expeditiously, section 116.190.4 does not "clearly limit" an *existing* right of appeal, but instead *creates* a right to appeal a judgment that is "final" as defined by *Wilson*, 600 S.W.3d at 768, but that is still interlocutory in character while the judgment awaits the required passage of time and circumstances to become final for purposes of appeal pursuant to section 521.020(5). This statutory right of appeal is plainly permissive, as section 116.190.4 unambiguously provides that an appeal "may" be filed within ten days, and not that an appeal "shall" or "must" be filed within ten days. *See, e.g.*, *State v. Patterson*, 729 S.W.2d 226, 228 (Mo. App. S.D. 1987) ("The use of the word 'may' in a statute implies alternate possibilities, and that the conferee of the power . . . has discretion in the exercise of the power." (citing *Pfefer v. Bd. of Police Comm'rs*, 654 S.W.2d 124, 128 (Mo. App. W.D. 1983))).

This construction of section 116.190.4 is consistent with the holding in *Sanford v. CenturyTel of Mo., LLC*, 490 S.W.3d 717, 720-21 (Mo. banc 2016), where our Supreme Court held that when the General Assembly authorizes an appeal from an interlocutory order, the order is deemed final for purposes of appeal when it is entered, and, if an

---

[12]A trial court's authority pursuant to Rule 74.01(b) to certify an interlocutory judgment final for purposes of appeal under certain circumstances is only applicable by its terms to judgments that resolve fewer than all claims as to all parties, and does not appear to extend authority to a trial court to expedite the time for filing an appeal from a final judgment, as that term is defined by *Wilson,* 600 S.W.3d at 768.

14

interlocutory appeal is to be filed, it must be appealed within ten days. Analogously, section 116.190.4 creates a right of appeal from a judgment that, though "final" because it resolves all issues as to all parties, remains interlocutory in its character for a period of time. The permissive right to appeal an interlocutory "final" judgment created by section 116.190.4 can only be exercised, however, for ten days after the judgment's entry. Yet, "the failure to timely file [an] interlocutory appeal does not preclude [the aggrieved party] from obtaining review . . . after final judgment." *Id.* at 723. This reasoning, analogously applied to section 116.190.4, requires the conclusion that while the General Assembly effectively created the right to file an interlocutory appeal from a section 116.190 judgment within ten days of its entry, the General Assembly did not mandate the filing of an interlocutory appeal. Instead, should a party to a section 116.190 suit fail to file an interlocutory appeal within ten days of entry of the circuit court's judgment, that party is not precluded from obtaining review, but must await the judgment becoming final for purposes of appeal pursuant to section 512.020(5), and Rules 81.04, 81.05, and 75.01.

This is the only construction of section 116.190.4 that respects the separation of powers set forth in Article V, section 5 of the Missouri Constitution, which, as we have already noted, affords the Supreme Court the authority to "establish rules relating to practice, procedure and pleading for all courts and administrative tribunals, which shall have the force and effect of law," but which prohibits those rules from "chang[ing] . . . the right of appeal." "To effectuate the authority Missouri's constitution vests in [the Supreme] Court, the [Supreme] Court has promulgated Rules of Civil Procedure 41 to 101." *State ex rel. Collector of Winchester v. Jamison*, 357 S.W.3d 589, 592 (Mo. banc 2012). "As Rule

15

41.02 notes, these rules, promulgated pursuant to article V, section 5 of the constitution, 'supersede all statutes and existing court rules inconsistent therewith." *Id*. (quoting Rule 41.02).

If we were to construe the phrase "[a]ny party to the suit *may* appeal . . . within ten days after a circuit court decision" to mean that an appeal *must* be filed within that time frame, as urged by the Secretary of State, we would be construing section 116.190.4 to legislatively annul Rules 81.04, 81.05, and 75.01 as applied to judgments entered in section 116.190 actions.[13]  Though the General Assembly has the plenary power to amend or annul a Supreme Court procedural rule, it must do so in strict compliance with the Article V, section 5 of the Missouri Constitution, which directs that "[a]ny rule may be annulled or amended in whole or in part by a law limited to the purpose," which has been interpreted to require a law that "'refer[s] expressly to the rule,'" and that is "limited to the purpose of amending or annulling it." *Jamison*, 357 S.W.3d at 592 (quoting *State ex rel. K.C. v. Gant*, 661 S.W.2d 483, 485 (Mo. banc 1983)).  Section 116.190.4 does not refer to any Rule of Civil Procedure, nor express an intent to annul a Rule of Civil Procedure.  Therefore, we will not interpret section 116.190.4 in a manner that would call its constitutionality into question, especially when the General Assembly's use of the word "may" suggests a plain and unambiguous intent to create a new and permissive right of appeal from an otherwise interlocutory judgment for a limited period of time, though not to the exclusion of the

---

[13]Consistent with our conclusion, it is noteworthy that in *In Interest of D.J.B.*, 704 S.W.2d 217, 218 (Mo. banc 1986), the Supreme Court held that the General Assembly's attempt in section 211.261 to exclusively limit the time to appeal from a final juvenile court judgment to thirty days after the judgment's entry was inconsistent with, and thus superseded by, Rules 81.04 and 81.05(a), based on the application of Article V, section 5 of the Missouri Constitution.

16

general right to appeal from a final judgment provided for in section 512.020(5), and procedurally permitted as contemplated by Rules 81.04, 81.05, and 75.01. *Murrell v. State*, 215 S.W.3d 96, 102 (Mo. banc 2007) (holding that doubt should be resolved in favor of a statute's validity by making all reasonable interpretations that will uphold the statute's constitutionality); *State v. Vaughn*, 366 S.W.3d 513, 517 (Mo. banc 2012) ("If a statutory provision can be interpreted in two ways, one constitutional and the other not constitutional, the constitutional construction shall be adopted.")

We thus distinguish *Howard*, 348 S.W.3d 831, the case relied on by the Secretary of State for the proposition that section 512.020 requires us to construe "may" to mean "shall" when referring to rights of appeal in special statutory proceedings. In *Howard*, the Eastern District concluded that "[i]n unemployment matters, the procedures outlined for appeal by statute are mandatory," such that the Labor and Industrial Relation Commission's "decision becomes final ten days after it is mailed to the parties." *Id.* at 832 (citing section 288.200.2). The Eastern District also noted that section 288.210 requires a notice of appeal to be filed "within twenty days of the Commission's decision becoming final." *Id.* The Court concluded that an appeal filed outside this timeframe was untimely, and had to be dismissed, and that "the provisions for a special order for late notice of appeal as set forth in Supreme Court Rule 81.07 do not apply to special statutory proceedings, such as unemployment benefits under chapter 288." *Id.* at 832-33.

Contrary to the Secretary of State's contention, *Howard* does not support the broad and sweeping proposition that Supreme Court Rules calculating the time for filing an appeal never apply to special statutory proceedings, or that statutory provisions describing

17

the time to appeal in special statutory proceedings are always exclusive and controlling. Instead, *Howard* merely recognized that section 512.020 (which addresses who may appeal from a judgment entered by a ***trial court*** in a civil cause), and Rules like 81.04, 81.05, and 75.01, (which address the entry of judgments by ***trial courts***, a ***trial court's*** continuing authority over its judgments, and the time for appealing a ***trial court's*** judgment), have no application to the category of special statutory proceedings that involve the disposition of claims by administrative agencies. *See, e.g., City of St. Louis v. Dir. of Revenue*, 654 S.W.2d 118, 122-23 (Mo. App. W.D. 1983) (dismissing appeal because a late appeal was taken to Administrative Hearing Commission); *Holmes v. Navajo Freight Lines, Inc.*, 488 S.W.2d 311, 315 (Mo. App. K.C. Dist. 1972) (holding that statutes and Rules generally addressing when and how an appeal may be taken in a civil cause do not apply to Workers' Compensation proceedings that are administrative in nature and "governed by special laws"); *Cardinal Glennon Mem'l Hosp. Coffee Shop v. Dir. of Revenue*, 624 S.W.2d 115, 118 (Mo. App. W.D. 1981) ("The neglect to comply with the statutory time for an appeal from an agency decision-whether to another administrative body or to the circuit court-results in lapse of jurisdiction and right of appeal." (*citing Randles v. Schaffner*, 485 S.W.2d 1, 2 (Mo. 1972))). These cases are of no relevance to section 116.190, which, though a special statutory proceeding, is a proceeding conducted by a ***trial court*** that results in the entry of a final judgment that is subject to the right of appeal set forth in section 512.020(5), and to Rules addressing when and how that right of appeal can be exercised. *See Porter v. Emerson Elec. Co.*, 895 S.W.2d 155, 159 (Mo. App. S.D. 1995) (holding that special administrative proceedings are not governed by Rules of Civil Procedure applicable to trial

18

courts in the absence of specific legislative authority, and that as a result, "Rule 81.04(a) applies to only appeals from judgments or orders of trial courts, not to appeals from awards by" administrative agencies), *overruled on unrelated grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003).

We therefore conclude that the right of appeal in a suit filed pursuant to section 116.190 is not "clearly limited by special statutory proceedings" as contemplated by section 512.020. Instead, as noted, section 116.190.4 ***creates*** an otherwise non-existent, though temporally limited, right of appeal from a judgment that is effectively interlocutory in its nature because it is not yet final for purposes of appeal pursuant to section 512.020(5), and Rules 81.04, 81.05, and 75.01. Though it is hard to imagine why a party aggrieved by a circuit court decision in a section 116.190 case would elect to forgo the permissive right to appeal within ten days authorized by section 116.190.4,[14] the fact remains this is a choice left to the discretion of an aggrieved party. Thus, if no appeal is taken within ten days as permitted by section 116.190.4, then the circuit court's judgment remains subject to the right of appeal from a final judgment described in section 512.020(5), as that term is defined by, and within the time prescribed by, a collective reading of Rules 81.04, 81.05 and 75.01.

That brings us to our current circumstances. The Treasurer concedes that his appeal, which was filed on December 27, 2021, was not filed within ten days of the circuit court's December 13, 2021 Judgment, as would have been authorized by section 116.190.4. The

---

[14]If an appeal in a section 116.190 case is filed within ten days as authorized by section 116.190.4, then, as noted in *Sanford*, the "trial court's jurisdiction to modify that [judgment] . . . is relinquished to the appellate court." 490 S.W.3d at 721 (emphasis in original omitted).

19

Treasurer's appeal is not, therefore, statutorily authorized by section 116.190.4. That does not require us, however, to dismiss the Treasurer's appeal. The Treasurer is not foreclosed from seeking appellate review of the Judgment pursuant to section 512.020(5) once it becomes final and appealable pursuant to Rules 81.04, 81.05, and 75.01. *Sanford*, 490 S.W.3d at 722-23. However, the December 13, 2021 Judgment will not become a final, appealable judgment pursuant to these Rules until, at the earliest, January 12, 2022, thirty days after its entry. As such, the Treasurer's December 27, 2021 notice of appeal was both delinquently filed for purposes of exercising the permissive right of appeal under section 116.190.4, and prematurely filed for purposes of exercising the right of appeal from a final judgment under section 512.020(5). However, under the circumstances in this case, we will not dismiss the Treasurer's prematurely filed appeal, because a premature notice of appeal "shall be considered as filed immediately after the time the judgment becomes final for the purpose of appeal." Rule 81.05(b).

We entered an order expediting this appeal to facilitate the full and final adjudication of this case by January 14, 2022, the date the Treasurer represents to be the statutory deadline imposed by section 116.190.5. Consistent with the requirement to fully and finally adjudicate this case by January 14, 2022, we scheduled oral argument on January 7, 2022. But, the Treasurer's premature notice of appeal cannot be considered timely filed until January 13, 2022. We thus declared on the record at the conclusion of oral argument that this case would not be deemed submitted until, at the earliest, January 13, 2022, presuming no authorized after-trial motions have been timely filed in the circuit court. Rule 81.05(a)(2); see *Reynolds v. Reynolds*, 109 S.W.3d 258, 270 (Mo. App. W.D. 2003) (noting

20

that the premature filing of a notice of appeal does not divest the circuit court of jurisdiction over the cause). We have now confirmed that no authorized after-trial motions have been filed in the circuit court. As such, the Treasurer's premature notice of appeal was deemed filed on January 13, 2022 by operation of Rule 81.05(b), and this case was deemed submitted on the same date.

By separate order, the time for filing a post-opinion application for transfer to the Supreme Court has been expedited, as to permit a window of opportunity to seek transfer to the Supreme Court before this cause is deemed extinguished by operation of section 116.190.5. Any hardship imposed on the parties by this short window of time to seek further appellate review is not attributable to inaction by this court.[15]

The Secretary of State's motion to dismiss this appeal is denied. We turn to the merits of the Treasurer's appeal.

## Analysis

In two points on appeal, the Treasurer challenges the Judgment's conclusion that the official ballot title (and specifically, the summary statement) is not unfair or insufficient based on the use of the word "override." In two additional points on appeal, the Treasurer challenges the Judgment's conclusion that the "yes" section of the fair ballot language is not unfair or insufficient by suggesting in the first sentence that a "yes" vote would amend the Missouri Constitution to grant the General Assembly statutory authority to invest state funds, and by suggesting in the third sentence that a "yes" vote would give the General

---

[15]In fact, it is noteworthy that the Treasurer's unopposed motion to expedite this appeal, which was filed on December 28, 2021, suggested a schedule that would not have had this matter fully briefed until January 10, 2022. This Court imposed a schedule that was more expedited than that suggested by the parties.

21

Assembly the sole authority for determining investment avenues available to the State Treasurer.

"As in any court-tried matter, we will sustain the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Boeving*, 493 S.W.3d at 873. "Where . . . the parties simply argue the fairness and sufficiency of the summary statement [or fair ballot language] based upon stipulated facts, joint exhibits, and undisputed facts, the only question on appeal is whether the trial court drew the proper legal conclusions, which we review *de novo*." *Id*. (quoting *Billington v. Carnahan*, 380 S.W.3d 586, 591 (Mo. App. W.D. 2012)).

"Secretary of State summary statements [in an official ballot title] . . . are required by section 116.190.3 to be sufficient and fair." *Brown v. Carnahan*, 370 S.W.3d 637, 653 (Mo. banc 2012). Though no reported Missouri case has addressed a challenge to fair ballot language, we conclude that the same sufficiency and fairness standard applies, as section 116.025 directs that challenges to fair ballot language shall be conducted in accordance with section 116.190.

"Under [section] 116.190.3, '[t]he party challenging the language of the summary statement [or fair ballot language] bears the burden to show that the language is insufficient or unfair.'" *Pippens v. Ashcroft*, 606 S.W.3d 689, 701 (Mo. App. W.D. 2020) (quoting *Hill v. Ashcroft*, 526 S.W.3d 299, 308 (Mo. App. W.D. 2017)). "Insufficient means 'inadequate; especially lacking adequate power, capacity, or competence.' The word 'unfair' means to be 'marked by injustice, partiality, or deception.'" *Id*. (quoting *Hill*, 526 S.W.3d at 308).

22

"The applicable question is not whether the summary [or fair ballot language] drafted is the best summary [or fair ballot language], 'but whether [it] gives the voter a sufficient idea of what the proposed amendment would accomplish, without language that is intentionally unfair or misleading. The idea is to advise the citizen what the proposal is about.'" *Id*. at 702 (quoting *Sedey v. Ashcroft*, 594 S.W.3d 256, 263 (Mo. App. W.D. 2020)). With this standard in mind, we address the Treasurer's specific challenges to the summary statement in the official ballot title, and to the fair ballot language.

The Treasurer objects in his third and fourth points on appeal to use of the word "override" in the first bullet point of the summary statement in the official ballot title, which provides that the proposed amendment to the Missouri Constitution would "allow the General Assembly to override the current constitutional restrictions of state investments by the state treasurer." The Treasurer claims that the word "override" misstates what HJR 35 will do and is misleading because the measure does not change existing constitutional restrictions on the Treasurer's investment authority, and merely expands that authority. The Treasurer also argues that the word "override" is intentionally argumentative and is likely to create prejudice because the word has a distasteful connotation.

The circuit court's Judgment rejected the Treasurer's arguments, and found the summary statement in the official ballot title not to be unfair or insufficient. The circuit court's conclusion is not legally erroneous.

The circuit court noted that the dictionary definition of the word "override" means "[t]o dominate or prevail over; to set aside." Webster's Third New International Dictionary 1609 (2022). The Treasurer does not challenge this definition. HJR 35 proposes three

23

distinct changes to Article IV, section 15 of the Missouri Constitution. It extends from five to seven years the length of time for certain authorized investments before they must mature. It authorizes the Treasurer to invest in certain municipal securities. And, it authorizes the Treasurer to "invest in other reasonable and prudent financial investments and securities as otherwise provided by law." The latter proposed modification to the Constitution is the most dramatic, as it will permit the General Assembly to expand the Treasurer's investment authority by statute, without the need for future constitutional amendments expressly authorizing a particular investment.

The first bullet point of the summary statement prepared by the Secretary of State appropriately highlighted this dramatic change. And although the proposed language in HJR 35 appears in its effect to only permit legislative expansion of the Treasurer's investment authority, it is equally true that the proposed language in HJR 35 permits the General Assembly to "override" (that is, to "dominate" or "prevail over") the current constitutional restrictions on authorized investments by expanding that list by statute, without a vote of the people. Though the Treasurer would prefer use of the word "expand" instead of "override," the test of fairness and sufficiency is not whether alternate ballot language might be better. *Asher v. Carnahan*, 268 S.W.3d 427, 431 (Mo. App. W.D. 2008). The Treasurer's third and fourth points on appeal challenging the summary statement in the official ballot title are denied.

The Treasurer's first and second points on appeal challenge the fair ballot language in two respects that are relevant to this appeal,[16] both of which involve the "yes" section. That section provides:

> A **"yes"** vote will amend the Missouri Constitution to grant the General Assembly statutory authority to invest state funds and also expand the state treasurer's investment options. Currently the Constitution grants the General Assembly no statutory investment authority and limits the treasurer's investment options. This amendment will allow the General Assembly by statute to determine investment avenues for the state treasurer to invest state funds, as well as allow the state treasurer to invest in municipal securities.

The Treasurer argues that this section is unfair and/or insufficient because it implies in the first sentence that the General Assembly will be investing funds, and because it implies in the third sentence that the General Assembly will have the exclusive power to determine the investment options available to the Treasurer.

The circuit court rejected the Treasurer's challenges, and found the "yes" section of the fair ballot language not to be unfair or insufficient. The circuit court's conclusion is not legally erroneous.

With respect to the first sentence of the "yes" section, the circuit found that the word "invest" is defined by the dictionary to mean "to commit (money) for a long period in order to earn a financial return." Webster's Third New International Dictionary 1189 (2022). The Treasurer does not challenge this definition. As noted, HJR 35 would amend the Missouri Constitution to effectively grant the General Assembly the statutory authority to

---

[16]The Treasurer's third challenge to the fair ballot language involved the "no" section, and argued that the section was incomplete and missing terms. That challenge was resolved by agreement between the Treasurer and the Secretary of State, and by the circuit court's certification of the fair ballot language with the "no" section modified to add a phrase jointly proposed by the parties.

authorize the investment of state funds into options not otherwise expressly noted in Article IV, section 15. Though the amendment would not permit the General Assembly to actually make investments, we do not believe that the first sentence of the "yes" section is intentionally argumentative or likely to create prejudice or confusion for voters. The language accurately alerts voters that the General Assembly will be given authority to permit the Treasurer to make certain investments in the future, even though those investments are not described in Article IV, section of the Missouri Constitution. It is this fact, and not the identity of the state officer who will technically make the investments, that is the central feature of the amendment proposed by HJR 35. As the circuit court noted in its Judgment, though other language might have better explained the General Assembly's role in the investment process, that does not mean the language used by the Secretary of State was unfair or insufficient, as it plainly captured the central feature of the amendment proposed by HJR 35.

That conclusion is bolstered when the first sentence of the "yes" section is read in conjunction with the other sentences in the "yes" section. The second sentence of the "yes" section highlights that the Constitution currently "grants the General Assembly no statutory investment authority and limits the treasurer's investment options." The third sentence of the "yes" section provides that the amendment will "allow the General Assembly to determine investment avenues *for the state treasurer to invest state funds*." (Emphasis added.) Read in its totality, the "yes" section of the fair ballot language fairly and sufficiently alerts voters that the General Assembly will be given authority not presently possessed to expand the Treasurer's constitutional investment authority. *Sedey*, 594

S.W.3d at 266 (holding that "'the overall language'" must be considered, as well as "'the context in which [] words . . . appear'" when determining the fairness of ballot language) (quoting *Stickler v. Ashcroft*, 539 S.W.3d 702, 718 (Mo. App. W.D. 2017)). The Treasurer's first point on appeal challenging the first sentence of the fair ballot language is denied.

With respect to the third sentence of the "yes" section of the fair ballot language, the circuit court found that the language used by the Secretary of State did not imply that the General Assembly has the exclusive power to direct the investment options available to the Treasurer. The circuit court found that the third sentence alerts voters that the General Assembly will be allowed to "determine investment avenues," but that nothing in the fair ballot language suggests that this power is exclusive to the General Assembly. We agree, as the third sentence continues to provide "for the state treasurer to invest state funds," inconsistent with an implication that the General Assembly will exclusively control the Treasurer's investment decisions. This conclusion is bolstered by the first sentence of the "yes" section of the fair ballot language which states that HJR 35 will "expand the state treasurer's investment options." Read in its totality, the "yes" section of the fair ballot language does not unfairly or insufficiently imply that the General Assembly will have exclusive power over the Treasurer's investment decisions. *See Sedey*, 594 S.W.3d at 266. The Treasurer's second point on appeal challenging the third sentence of the fair ballot language is denied.

27

## Conclusion

For the reasons explained herein, the circuit court's Judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur